IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESTDALE CONSTRUCTION, LTD,<br>    Plaintiff/<br>    Counter-defendant,<br><br>    v.<br><br>WILLIAM KWASNIK, MICHAEL W.<br>KWASNIK, MICHAEL ERHARD, and<br>OPIS MANAGEMENT FUND LLC,<br>    Defendants/<br>    Counter-claimants. | CIVIL NO. 11-5701(NLH)(JS)<br><br>OPINION |

**Appearances:**

MIGUEL A. POZO
MICHAEL T.G. LONG
JAMIE R. GOTTLIEB
LOWENSTEIN SANDLER PC
65 LIVINGSTON AVENUE
ROSELAND, NJ 07068

    On behalf of plaintiff

MICHAEL W. KWASNIK
KWASNIK, RODIO, COHEN & PIKUNIS, ESQS.
1920 FAIRFAX AVENUE
CHERRY HILL, NJ 08003

    On behalf of defendants William Kwasnik and OPIS Management
    Fund LLC, and himself *pro se*

**HILLMAN**, District Judge

    This matter has come before the Court on plaintiff's motion for partial summary judgment on its breach of contract claim against defendants William Kwasnik, Michael W. Kwasnik, Michael Erhard, and OPIS Management Fund LLC, as well as plaintiff's motion to dismiss defendants' counterclaims.  For the reasons

expressed below, plaintiff's motions will be granted.

## BACKGROUND

In June 2009, plaintiff Westdale Construction Company, Ltd. commenced a breach of contract action in this Court against Liberty State Benefits of Pennsylvania, Inc. ("Liberty Benefits") and Liberty State Financial Holdings Corporation ("Liberty Financial"), captioned <u>Westdale Construction, Ltd. v. Liberty State Benefits of Pennsylvania, Inc. et al.</u>, Civ. Action No. 09-2973 (NLH)(JS). There, Westdale claimed that it had entered in a contract to loan Liberty Benefits $2,306,120.00 in order to purchase the beneficial interests in certain irrevocable life insurance trusts ("ILLTs"). The loan was to be repaid at 5% interest per month, no later than March 2009. By the end of March 2009, however, Liberty Benefits had failed to repay Westdale's loan. Westdale then filed suit against the Liberty defendants.

After several hearings, the appointment of an independent trustee to investigate the irrevocable life insurance trusts at issue, a referral of the matter to the United States Attorney's Office, and the imposition of a prejudgment writ of attachment, this Court granted Westdale's motion for summary judgment on its breach of contract claim against Liberty Benefits, and entered judgment in its favor in the amount of $4,151,016.00. During the pendency of the remaining claims, the parties reached a global

settlement, and the case was closed.

In this instant matter, Westdale claims that defendants have failed to honor their obligations under the settlement agreement in the prior case. According to Westdale's complaint, under the parties' written settlement agreement, the parties agreed to a $2.9 million settlement, which the settling defendants would pay in installments within 90 days. The settlement payments were personally guaranteed by individual guarantors--defendants William Kwasnik, Michael Kwasnik, and Michael Erhard--who agreed to the entry of a consent judgment against them in the amount of $4,100,000 in the event of a default on the settlement payment terms. OPIS Management Fund LLC also pledged four million shares of its stock in Nutra Phrama Corporation as collateral for payment under the settlement agreement.

Westdale now claims that the settling defendants failed to pay it more than $2 million of the $2.9 settlement by the payment deadline.[1] Westdale also claims that OPIS failed to pledge its collateral stock. Westdale claims that the settling defendants are now in default, and it is owed $4.1 million plus the collateral stock, along with various fees and costs.

Because the Liberty defendants have since filed for

---

[1] The payment deadlines appear to have been extended twice by agreement of the parties.

bankruptcy protection, Westdale filed suit against the individual guarantors and OPIS for breach of contract, among other claims.[2] The individual guarantors and OPIS filed counterclaims against Westdale for fraudulent inducement, fraud and civil conspiracy.

Through its current motions, Westdale seeks the entry of its consent judgment against the individual guarantors, and the dismissal of defendants' counterclaims.  The defendants have opposed Westdale's motions.[3]

## DISCUSSION

**A.    Jurisdiction**

---

[2]Westdale filed claims for promissory estoppel against defendants, presumably in the alternative to its breach of contract claims.  See Van Orman v. American Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982) (explaining that New Jersey law provides that recovery under quasi-contractual obligations may not be had when a valid, unrescinded contract governs the rights of the parties).  Westdale is not moving for summary judgment on those claims.

[3]Defendant Michael Erhard, through attorney David DeClement, answered Westdale's complaint on October 24, 2011.  A few weeks later, Mr. DeClement filed an amended answer and counterclaims on behalf of William Kwasnik, Michael Kwasnik, and OPIS, and not on behalf of Erhard.  On February 1, 2012, Mr. DeClement was terminated as counsel for the Kwasniks and OPIS, with Michael Kwasnik entering his appearance on his own behalf and on behalf of William Kwasnik and OPIS.  Although Mr. DeClement was listed on the docket as appearing as counsel for Erhard, as of January 12, 2012, Mr. DeClement indicated that he was not serving as counsel for Erhard, and Mr. DeClement was terminated as Erhard's counsel on the docket on February 1, 2012.  The Court has not been contacted by Erhard or by any counsel on his behalf, and he has not responded to Westdale's motion.  The Court will thus consider Westdale's motion unopposed by Erhard, and for the same reasons herein, summary judgment on Westdale's breach of contract claim against Erhard will be entered in Westdale's favor.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

5

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the

6

pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a

7

Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

**D.   Analysis**

Defendants do not appear to contest the following: (1) the Liberty entities and Westdale agreed that Westdale would accept $2.9 million in forbearance on its collection efforts on its $4.1 million judgment against the Liberty entities; (2) if the Liberty entities failed to make payment within 90 days, the entire $4.1 million would be due to Westdale; (3) if the Liberty entities defaulted, a consent judgment for $4.1 million would be entered; (4) Michael Kwasnik and Michael Erhard signed personal guarantees, which each guaranteed payment to Westdale in the amount of $2.9 million, as well as attorneys' fees and costs; (5) William Kwasnik executed a personal guaranty, which guaranteed payment to Westdale in the amount of $2.52 million, as well as attorneys' fees and costs; (6) William Kwasnik, Michael Kwasnik,

and Michael Erhard agreed to be bound jointly and severally to the settlement terms; (7) the individual guarantors would be subject to a default interest rate of 30% per year; (7) OPIS pledged four million shares of stock in Nutra Pharam Corporation as collateral to secure payment under the settlement agreement, Westdale would release those shares of stock upon the final payment to Westdale, and OPIS would be obligated to reimburse Westdale for OPIS's failure to perform under the agreement; (8) no defendants have performed as they promised under the various agreements.

    Instead of refuting the agreements and their obligations thereunder, in their opposition to Westdale's motions, defendants contend that summary judgment should not be entered, and their counterclaims should not be dismissed, because of fraudulent activity that has been discovered between Westdale and the Liberty entities since the agreements were entered into.  In their counterclaim complaint, defendants seem to contend that Westdale did not loan $2.4 million to the Liberty entities, but rather the Liberty entities only received $835,120.00 because the remainder of the $2.4 million was diverted by an agent of Westdale.  Thus, defendants appear to claim that because the Liberty entities' debt  that they agreed to guarantee involved fraud, they should be relieved of their obligations under the settlement agreement.

In addition to being conclusory and vague, defendants' allegations inappropriately attempt to reopen the judgment entered by this Court in the prior case, <u>Westdale Construction, Ltd. v. Liberty State Benefits of Pennsylvania, Inc. et al.</u>, Civ. Action No. 09-2973.  There, on April 1, 2010, the Court found that there was no disputed fact that "(1) plaintiff [Westdale] and Liberty Benefits entered into a valid contract, with mutual consideration, which contained all the essential terms of a loan agreement (amount; term, interest rate, purpose, and collateral); (2) except for breach, the parties admit or do not contest that they acted in a manner consistent with that agreement thereby confirming its core terms; (3) Liberty Benefits breached the contract; and (4) plaintiff has suffered damages due to Liberty Benefits' breach in the amount of $2,306,120.00 plus interest at 5% per month from December 2008 through March 2010."  (Civ. A. 09-2973, Docket No. 63 at 8-9.)  The Court then granted summary judgment in Westdale's favor against Liberty Benefits, and entered a Judgment for Westdale in the amount of $4,151,016.00. The defendants in that case--the Liberty entities and Michael Erhard--filed an appeal of that decision on May 19, 2010, but as of September 21, 2010, the Third Circuit dismissed their appeal for lack of prosecution, which presumably was due to the July 2010 settlement and stipulation of dismissal, with prejudice, of Westdale's claims.  (Civ. A. 09-2973, Docket No. 78, 88, 89.)

Through their counterclaim, defendants are attempting to show that material disputed facts existed regarding whether Liberty Benefits breached its loan agreement with Westdale by not repaying Westdale $2,306,120.00 plus interest at 5% per month, because it only received $835,120.00.  Notwithstanding the fact that Liberty Benefits admitted to receiving $2.3 million from Westdale (Civ. A. 09-2973, Docket No. 63 at 6), defendants here have no standing to challenge the Court's judgment on Westdale's claim against Liberty Benefits.  Thus, their attempt to challenge the judgment in that case fails.

Moreover, defendants cannot bootstrap their allegations as to whether Liberty Benefits actually received the full $2.3 million from Westdale to defeat what they promised to Westdale in the settlement agreement.  This Court found that Liberty Benefits failed to pay Westdale under the terms of their loan agreement.  In settlement of that claim, Westdale and Liberty Benefits entered into another agreement to resolve the judgment entered against Liberty Benefits.  Michael Kwasnik, William Kwasnik, Michael Erhard and OPIS also entered into agreements with Westdale to personally guarantee or secure Liberty Benefits' obligations under the settlement agreement.  These defendants do not, and cannot, say that they did not make those promises to Westdale to ensure Liberty Benefits' obligations that arose out of loan agreement held to be valid and enforceable by this Court.

11

Essentially, it appears that defendants believe that some board members and other employees and agents of the Liberty entities (included co-defendant Erhard) hid information from them, and if they had known about that information, they would not have entered into any personal guarantees with Westdale on the Liberty entities' behalf. Defendants also contend that Westdale's agents colluded with the Liberty entities' agents regarding the assignment of the trusts and the transfer of funds, thus damaging Liberty Benefits and its noteholders, Michael Kwasnik, William Kwasnik, and OPIS.

Even accepting as true their allegations regarding fraud and surreptitious collusion in the sale and purchase of the irrevocable life insurance trusts for which Westdale loaned Liberty Benefits money, defendants have not articulated a viable basis to demonstrate that their agreement with Westdale is not valid. "A contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance." Johnson & Johnson v. Charmley Drug Co., 95 A.2d 391, 397 (N.J. 1953); see also Corestar Intern. Pte. Ltd. v. LPB Communications, Inc., 513 F. Supp. 2d 107, 116 (D.N.J. 2007) ("At the most basic level, a contract consists of an offer, acceptance and consideration.").[4]

---

[4]To prove a breach of contract, a plaintiff must show that a valid agreement existed, defendant materially breached the terms of the agreement, and plaintiff suffered damages as a result of the breach. See Sery v. Federal Business Centers, Inc., 616 F. Supp. 2d 496, 507 (D.N.J. 2008) (discussing New Jersey law).

To prove that the contract was procured by fraud, defendants must prove: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

Defendants urge the Court to allow discovery to proceed so that they can support their allegations of fraudulent activity. Before defendants are entitled to discovery, however, they must either (1) plead enough facts to raise a reasonable expectation that discovery will reveal evidence that Westdale knew that defendants should not be on the hook for repayment of the loan, see Phillips, 515 F.3d at 234,[5] or (2) identify specific facts and affirmative evidence that contradict those offered by Westdale, see Anderson, 477 U.S. at 256-57.  Defendants have not,

---

[5]Additionally, "In all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity," Fed. R. Civ. P. 9(b), and the Third Circuit has interpreted Rule 9(b) to require litigants to inject "precision and some measure of substantiation into [their] allegations of fraud" such as the "date, time, and place," Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Defendants have failed to meet this standard in their counterclaims, particularly because their claims concern Westdale's alleged fraud perpetrated on Liberty Benefits, which is not a party to this action.

13

and cannot, do either.[6]

Westdale had a judgment of this Court ordering Liberty Benefits to pay Westdale $4,151,016.00.  Based on that judgment, Westdale agreed to take almost half of what it was entitled to, so long as Liberty Benefits paid within a certain amount of time, OPIS provided collateral, and the individual defendants would collectively pay what Westdale was owed under the judgment if Liberty Benefits defaulted.  Defendants agreed to all of this, and the deal did not contain any material misrepresentations as to what Westdale was owed pursuant to the Court's judgment.  No amount of discovery will refute these facts.

In order to vindicate their claims that they have been defrauded, defendants would have to institute their own action against those parties they believe caused them injury.[7]  Indeed,

---

[6]Defendants ask this Court to review the 1000 pages of exhibits they have submitted in Liberty Benefits' bankruptcy proceedings pending before the U.S. Bankruptcy Court in Delaware.  It is defendants' obligation to provide to the Court the evidence to support their arguments and claims. Moreover, a court should not "be required to scour [another court's] records and transcripts, without specific guidance, in order to construct specific findings of fact . . . ."  Holland v. New Jersey Dept. of Corrections, 246 F.3d 267, 285 (3d Cir. 2001); see also Doeblers' Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 (3d Cir. 2006) (quoting Albrechtsen v. Board of Regents of University of Wisconsin System, 309 F.3d 433, 436 (7th Cir. 2002)) ("Judges are not like pigs, hunting for truffles buried in the record.").

[7]If they could do so in accordance with Appendix R of the Court's Local Rules, the Rules of Professional Conduct and Rule 11 of the Civil Rules of Federal Procedure.

14

a separate case is pending regarding the alleged improper notarization of William Kwasnik's forged signature on the sale of one of the irrevocable life insurance trusts at issue in the Westdale v. Liberty State Benefits case, and two of the same colluders mentioned by defendants here are defendants in that case.[8]  Defendants, however, cannot lodge their allegations of fraud in the form of counterclaims against Westdale in its action to enforce a valid agreement they signed with Westdale.

## CONCLUSION

For the reasons expressed above, Westdale's motion for partial summary judgment on its breach of contract claim, as to liability only, is granted, and Westdale's motion to dismiss defendants' counterclaims is also granted.

With regard to damages, the Court will direct Westdale to clarify what it believes it is entitled to under the settlement agreement and personal guarantees.  Although Westdale asks for the consent order to be entered, it does not appear congruous with the settlement agreement and its amendments, it does not account for the amount it was paid by the Liberty entities, and it does not account for any interest, attorneys' fees, and costs

---

[8]See Tranen Capital Alternative Investment Fund, Ltd. V. Sovereign Bank, Civil Action No. 11-7591 (NLH)(AMD).

provided for in the agreements.[9]

      An appropriate Order will be entered.


Date: July 30, 2012                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

[9] The settlement agreement provided that the Liberty entities (now under bankruptcy protection), Michael Kwasnik, and Michael Erhard agreed to a consent judgment entered against them in the amount of $4.1 million if they defaulted under the settlement agreement. Defendant William Kwasnik is not part of that consent judgment. Under their personal guarantees, William Kwasnik, Michael Kwasnik, and Michael Erhard each agreed to be bound, jointly and severally, by the settlement agreement, and personally guarantee the Liberty entities' compliance with the terms of the settlement agreement. William Kwasnik pledged $2.52 million, Michael Kwasnik pledged $2.9 million, and Michael Erhard pledged $2.9 million. It is unclear how William Kwasnik can be ordered to pay damages under a consent order he was not a party to, and it is unclear how the three defendants can be ordered to pay more than their personal guarantees if they are to be held jointly and severally liable for $4.1 million. It is also unclear how the default interest rate and the provision for attorneys' fees and costs is accounted for by the consent judgment. Moreover, it is unclear how the money paid to Westdale pursuant to the settlement agreement is accounted for. Additionally, it unclear how OPIS's pledge of its shares of Nutra Pharma stock as collateral for payment is affected by the consent judgment. Westdale shall address these issues, and provide an accounting with documentation, in support of its claim for damages.